Arnold Thomas KYLE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16144.

United States Court of Appeals
Ninth Circuit.

Feb. 16, 1959.

Arnold Thomas Kyle, in pro. per.

Charles P. Moriarty, U. S. Atty., Seattle, Wash., Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for appellee.

Before STEPHENS, Chief Judge, and HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant, a federal prisoner held in custody at the United States Penitentiary at Alcatraz, California, appeals from an order of the United States District Court, Western District of Washington, Southern Division, entered on June 30, 1958, denying without hearing appellant's motion "in the nature of a writ of coram nobis" to vacate and set aside the life sentence imposed upon him by the same District Court on October 21, 1940, following his plea of guilty to the offense of murder in the second degree, as set forth in Section 454, Title 18, U.S.C. 1940 Ed., now Sections 1111 and 1112, Title 18, U.S.C. 1954 Ed.

At the time of the imposition of the life sentence the appellant was in custody in the federal penitentiary at McNeil Island, Washington, serving sentences for bank robbery and attempting to escape from the United States Penitentiary at McNeil Island, Washington, totaling 30 years which will not expire until the latter part of 1959.

The motion of appellant was accompanied by appellant's affidavit, and the affidavit of Leo A. Sullivan, Attorney at Law. The district judge issued an order to show cause, ordering the United States to make and file a return showing cause if any there be why the relief sought by the petitioner should not be granted. The return to the order to show cause was accompanied by statements, affidavits, copies of correspondence, certificates and reports, controverting many of the alle-

gations set forth in appellant's motion and supporting affidavits.

The written order of the district court denying appellant's motion states that the court "has fully considered defendant's motion, affidavits and memoranda as well as the files and records of the cause * * * Since the files and records of the cause conclusively show that petitioner is not entitled to relief as prayed for or otherwise, it is hereby ordered that the motion be and the same hereby is denied and the order to show cause discharged."

The grounds of appellant's motion are:

1. That appellant did not have the effective assistance of counsel at the time when he entered his plea of guilty, in violation of the guarantee contained in the Sixth Amendment to the Constitution of the United States;

2. That the indictment was obtained by misrepresentation and fraud, thus denying to the appellant due process of law;

3. That appellant is innocent of the charge contained in the indictment; and

4. That there exists no corpus delicti of the crime charged in the indictment.

While the several grounds above mentioned are set forth in appellant's motion, they are all peripheral to appellant's main contention that he was denied the effective assistance of counsel. It is this point to which we will mainly direct our consideration.

In order to properly evaluate appellant's contentions it is necessary to review events which occurred in August, September and October of 1940.

On August 22, 1940, appellant and one Joseph Paul Cretzer were on trial in the United States District Court, Western District of Washington, Southern Division, on the charge of attempting to escape from the United States Penitentiary at McNeil Island, Washington, where appellant and Cretzer were serving sentences for bank robbery. Appellant was represented by Anthony M. Ursich, and Cretzer by William F. LeVeque, both

attorneys having been appointed by the court. During the morning session, the name of Leo A. Sullivan was entered of record as additional counsel for both defendants. During a recess in the afternoon of that day the two prisoners were in the detention room of Artis J. Chitty, United States Marshal for the District, and were handcuffed together. An attack was made upon the marshal in an attempt to secure his revolver. A melee ensued, and all three fell to the floor. The marshal was freed by guards assigned to guard the prisoners, and approximately five minutes later he dropped unconscious to the floor, and shortly thereafter was pronounced dead. Following the death of the marshal, the trial was resumed and at that time Mr. Leo A. Sullivan made a personal appearance in the court room. Following a conference between the three counsel, the pleas of not guilty were withdrawn by the prisoners to one count of the indictment and guilty pleas were thereupon entered. The two prisoners were thereupon sentenced to the custody of the Attorney General for a period of five years, the sentences to commence at the expiration and be in addition to the sentences which were being served for bank robbery.

On August 29, 1940, appellant and Cretzer were charged by indictment with murder in the first degree. They appeared in the district court on September 23, 1940, and both entered pleas of not guilty. Sullivan, who maintained his law office in Oakland, California, was not in court, but had communicated with the United States Attorney that he would appear as counsel for both prisoners. On September 30, 1940, defendants were again brought into court, and the case was set for trial on October 22, 1940. Sullivan was not in court, but was engaged in the trial of a case in his home area. He had notified the United States Attorney that he could not appear for the trial of the case prior to October 22, 1940.

On October 21, 1940, the two defendants were in court and Mr. Sullivan ap-

peared as counsel for both defendants. Pleas of not guilty were withdrawn and guilty pleas were entered to the offense of second degree murder. Both defendants were sentenced to life imprisonment.

The indictment alleged that both defendants attacked the marshal with intent to steal his revolver and to effect his death and did beat and strike him and wounded his body, from which said wounds the marshal died. In the death certificate issued August 22, 1940, it was stated that the immediate cause of death was left coronary thrombosis, due to coronary sclerosis and arteriosclerosis of aorta, due to myocarditis (myocardosis) of several years duration. Other items listed were contusions and ecchymoses of scalp, and that death followed an altercation.

Appellant states in his affidavit that he did not participate in the attack on the marshal, but that the attack was solely the act of Cretzer, who had not informed appellant of his intention to attack the marshal, and that appellant being handcuffed to Cretzer was an unwilling, helpless participant in the altercation which occurred. He further states that the deputy marshals assigned to guard appellant were hostile to him and advised him that he had better plead guilty and get away from Tacoma. Appellant states that he was unaware of the death certificate until after his guilty plea had been entered. Appellant states that he never hired Leo A. Sullivan to represent him, that Sullivan was the attorney for Cretzer; that appellant received no independent advice or counsel from Sullivan; that Sullivan never interviewed appellant separately from Cretzer; that the interests of Cretzer and appellant were conflicting; that Sullivan was not diligent in the proper defense of appellant, in that he was unaware of the death certificate and made no effort to set aside the indictment. Appellant claims to be innocent of the offense, and states that in entering his guilty plea appellant simply "went along" with Sullivan's advice to Cretzer.

The affidavits filed on returns to the order to show cause by the guards assigned to guard the prisoners state that appellant was an active participant in the attack on the marshal, and denied that they were hostile to or threatened appellant, or advised him to plead guilty. A written report by the doctor, dated August 24, 1940, states that the death of the marshal was precipitated by the attack made upon him.

The return filed to the order to show cause shows that Sullivan interviewed the two defendants at Alcatraz on Saturday, September 21, 1940. How long the interview lasted is not clear, but the interview terminated prior to ten o'clock of that morning. Apparently one purpose of the interview was to determine whether Sullivan would take the case. This appears from the proceedings on arraignment held on September 23, 1940, when the appellant stated, "I really don't know whether he (Sullivan) is going to represent me or not." On the same proceedings the appellant stated, "Mr. Sullivan has not in any way—has he told you (addressing himself to Mr. Hale) in any way that he would take this case?"

There is nothing in the record to suggest any communication by way of letters, telephone calls or telegrams, between appellant and Mr. Sullivan between September 30, 1940 and October 20 or 21, 1940. Sullivan did not interview the appellant until October 20, 1940, which fact appears from the affidavit of Michael Green, Deputy United States Marshal, which was filed as a part of the return to the order to show cause. In the affidavit Green states, "In connection with Mr. Sullivan's representation of both defendants Kyle and Cretzer in the murder trial, your affiant recalls that he personally on two or more occasions on the day before the murder trial and including the day of the murder trial, permitted Mr. Sullivan to interview them in the security cell of the Marshal's office, Federal Building, Tacoma, Washington, where both defendants were held and handcuffed together. To the best of

your affiant's knowledge, Mr. Sullivan did not appear in Tacoma, Washington for interview with either Kyle or Cretzer prior to the day before the time set for the murder trial, and that at no time did he interview either one of the defendants individually, all such interviews having taken place in the presence of both defendants."

The affidavit of Leo A. Sullivan, filed by the appellant in support of his motion, states that he was the attorney "for Joseph Paul Cretzer in a jail break which occurred on McNeil Island, Washington, in which penitentiary the said Joseph Paul Cretzer and Arnold Thomas Kyle were confined for bank robbery and they subsequently were recaptured.

"That then another jail break was attempted on the 22nd day of August, 1940, in which both Cretzer and Kyle participated, and I as the attorney for Joseph Paul Cretzer also was inveigled into representing Mr. Kyle in the defense of the said second jail break. William LeVeque represented Arnold Kyle in the original jail break and I represented Mr. Cretzer. I never received any money from Mr. Kyle. In fact, I hardly talked to him, but due to the importunities of the United States Attorney in the above district, I decided to plead Mr. Cretzer guilty of second degree murder, and Kyle's plea to the same effect just strung along, really, without any consultation with him at all. At the time, due to the misapprehension of facts, I thought it was a very good plea, but it subsequently developed that Mr. Chitty, the United States Marshal, dropped dead of heart failure and the death certificate will disclose that he did not die of any injuries inflicted by either Cretzer or Kyle. And, of course, that altered my aspect of the case.

"Arnold Kyle paid me nothing for his defense and I really did not represent him, and on that basis I am making this affidavit stating that if I had been fully informed and apprised of all the facts in the death of Marshal Chitty, there is no doubt that I would have pursued a different course."

In the return filed in response to the order to show cause the United States Attorney denied making any importunities to Sullivan.

There can be no doubt that Sullivan was the attorney of record for the appellant. The court records, numerous letters, telegrams and memoranda exchanged between Sullivan and the United States Attorney and other prison officials of the United States clearly establish such fact. Appellant does not deny the fact. His complaint rather is that matters not appearing of record show that Sullivan was primarily the attorney for Cretzer; that Sullivan was grossly derelict in the investigation of facts and in the preparation of appellant's defense; that Sullivan sacrificed appellant in order to secure a lighter sentence for Cretzer; in short, that appellant was denied that degree of effective representation to which one accused of crime is entitled. The affidavit of Sullivan substantially confesses the charges. The right of one accused of crime to the effective representation of counsel is a fundamental right. Glasser v. United States, 315 U. S. 60, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232; Com. of Pa. ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126. On the surface, and considering the gravity of the charge against appellant, it appears that Sullivan did not devote that zeal, loyalty and diligence in his representation of appellant which we have come to expect of lawyers. His interviews with appellant apparently relating to the case were confined to the day before and the day on which the plea of guilty was entered. He was unaware of the death certificate. Perhaps Sullivan did all that was required to adequately investigate the case in order to properly represent the appellant. We feel, how-

ever, that only a hearing before the district court could determine such question.

■■ We are not presented on this appeal with the question as to whether appellant is entitled to set aside his guilty plea and the sentence imposed pursuant thereto. The sole question before us is whether appellant, in his application for relief, made such a showing as to require hearing at the district court level. The able trial judge determined that the appellant's showing was insufficient. We are of the view that the showing made by the appellant compels a hearing, at which the appellant should be present.

We recognize that appellant has delayed the filing of his motion for many years. We must bear in mind that appellant has been and now is in custody under admittedly valid sentences (other than the one involved in these proceedings) which have not yet expired. In 1954 this Court held that an applicant has no right to have adjudged the validity of a sentence where, if adjudged in his favor, he will still be confined to the same penitentiary under another existing sentence. Oughton v. United States, 9 Cir., 215 F.2d 578. In the same year the Supreme Court decided that one in appellant's position could properly pursue a proceeding in the nature of a writ of coram nobis. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. That decision was followed by this Court in Lopez v. United States, 9 Cir., 217 F.2d 526, and Tucker v. United States, 9 Cir., 235 F.2d 238. We note from the return filed in response to the order to show cause that practically all of the witnesses to the events which took place in 1940 are presently still available.

The order appealed from is reversed, and the case is remanded to the district court with instructions to hold a hearing on appellant's motion, at which the appellant should be present.